1

2

3

4

5

6

7                   UNITED STATES DISTRICT COURT

8            FOR THE EASTERN DISTRICT OF CALIFORNIA

9

RIDGEWOOD ASSOCIATES, INC.,a
10  Nevada corporation; RIDGEWOOD
ASSOCIATES, INC., a California
11  corporation; and RICHARD ANDREW
MALOTT, an individual,

12                                    NO. CIV.S-06-1376 LKK/GGH

13        Plaintiffs,

14     v.
                                        O R D E R
15  MICHAEL TRUMPOWER, an individual;
DOES 1 through 10, inclusive;
16  and ROE CORPORATIONS 1 through 10,
inclusive,

17

        Defendants.
18  _____/

19      Plaintiffs have sued defendant to recover money lost in

20  various unsuccessful financial ventures, including a real estate

21  purchase, art acquisitions, and the recovery of gold from the

22  Phillippines.  The claims at issue include breach of contract,

23  breach of good faith and fair dealing, and unjust enrichment.

24  Pending before the court are cross motions for summary judgment.

25  The court resolves the matter upon the parties' papers and after

26  oral argument.  For the reasons set forth below, plaintiffs' motion

                                    1

1  for summary judgment is denied and defendant's motion for summary
2  judgment is granted.

3                              **I. Facts**[1]

4       The plaintiffs in this action, Ridgewood Associates, Inc. of
5  Nevada, Ridgewood Associates, Inc. of California, and Richard
6  Malott, Jr., have brought suit against defendant Michael Trumpower,
7  who is a resident of Arizona.  Plaintiff's Statement of Undisputed
8  Fact ("PSUF") ¶¶ 1-5.  The parties met in 1996 and became business
9  associates thereafter.  PSUF ¶ 7.  Defendant was essentially a
10 matchmaker who paired investors with investment opportunities.
11 PSUF ¶ 10.

12      Three business ventures gave rise to the present suit.  First,
13 plaintiffs maintain that they provided defendant with a refundable
14 fee of $150,000 in 1996 in order to find additional investors for
15 an undivided interest real estate venture.  PSUF ¶ 16.  Pursuant
16 to a written agreement, Trumpower was to use his best efforts to
17 obtain $15 million dollars on an unrestricted basis within 90 days,
18 and if he was not able to obtain this financing, he was to return
19 the $150,000 to Ridgewood California.  PSUF ¶ 19.  Trumpower was
20 not able to find any investors for the venture and did not return
21 the $150,000 fee.  PSUF ¶ 20.

22      Second, in 1996-97, plaintiffs spent a total of approximately
23 $610,000 in connection with a venture to obtain gold located in
24 caves in the Phillippines.  PSUF ¶ 37.  During one of the trips to

25 _____

26      [1] Undisputed unless otherwise noted.

1  the Phillippines financed by plaintiffs, defendant gave $340,000
2  in cash to his contacts, who were then to notify defendant when a
3  ton of gold bars would be ready for pick-up. PSUF ¶ 34.
4  Ultimately, though, no gold was ever delivered, and the parties
5  decided not to continue with the venture. PSUF ¶ 36. Plaintiffs
6  contend (and defendant disputes) that defendant orally agreed to
7  reimburse the expenses incurred. PSUF ¶ 39.

8      Third, plaintiffs claim that $225,000 was spent in connection
9  with a venture to obtain art that had been looted from the Emir of
10 Kuwait during the Gulf War. PSUF ¶ 40. The parties made several
11 trips to the Middle East to look at the various art and artifacts,
12 including paintings, sculptures, and gold coins. PSUF ¶ 42.
13 Defendant smuggled two or three paintings back with him to the U.S.
14 but was unable to have them evaluated by auction houses in the U.S.
15 PSUF ¶ 47-48. In order to document plaintiffs' financing of the
16 art venture, defendant signed a promissory note for $175,000 in
17 1997. PSUF ¶ 44. Plaintiffs also maintain that an additional
18 $50,000 was provided to "clean up" the conclusion of the art
19 venture. PSUF ¶ 51.

20     On November 6, 2001, defendant signed a letter agreement --
21 the lynchpin of the present litigation -- that purportedly
22 constituted an acknowledgment of the otherwise time-barred debts
23 to plaintiffs. PSUF ¶ 52. The original version drafted by
24 plaintiffs read: "In consideration of the cash sums advanced you
25 agree to return by January 4, 2002, an amount equal to 200%, or
26 $1,970,000." PSUF ¶ 54. Defendant did not sign the original

3

1 agreement.

2     Instead, defendant revised the document to read: "In

3 consideration of the cash sums advanced you agree to return as soon

4 as MATCO has available, an amount equal to 200%, or $1,970,000."

5 PSUF ¶ 55. The signature line was also changed from simply

6 "Michael Trumpower" to "Michael Trumpower" above the words "MATCO,

7 Inc." MATCO was a corporation, headed by defendant, that was

8 fighting off an involuntary bankruptcy petition by early 2001.

9 Def.'s Statement of Undisputed Fact ("DSUF") ¶ 24-25. In short,

10 defendant maintains that the November 2001 agreement was signed in

11 an agency capacity for MATCO, and that any obligation to pay would

12 only be triggered upon MATCO's future success.

13 **II. Standard**

14     Summary judgment is appropriate when it is demonstrated

15 that there exists no genuine issue as to any material fact, and

16 that the moving party is entitled to judgment as a matter of

17 law. Fed. R. Civ. P. 56(c); see also Adickes v. S.H. Kress &

18 Co., 398 U.S. 144, 157 (1970); Secor Ltd. v. Cetus Corp., 51

19 F.3d 848, 853 (9th Cir. 1995).

20     Under summary judgment practice, the moving party

21     [A]lways bears the initial responsibility of
       informing the district court of the basis for its
22     motion, and identifying those portions of "the
       pleadings, depositions, answers to interrogatories,
23     and admissions on file, together with the affidavits,
       if any," which it believes demonstrate the absence of
24     a genuine issue of material fact.

25 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the

26 nonmoving party will bear the burden of proof at trial on a

4

1  dispositive issue, a summary judgment motion may properly be made
2  in reliance solely on the 'pleadings, depositions, answers to
3  interrogatories, and admissions on file.'" Id.  Indeed, summary
4  judgment should be entered, after adequate time for discovery and
5  upon motion, against a party who fails to make a showing sufficient
6  to establish the existence of an element essential to that party's
7  case, and on which that party will bear the burden of proof at
8  trial. See id. at 322.  "[A] complete failure of proof concerning
9  an essential element of the nonmoving party's case necessarily
10 renders all other facts immaterial." Id.  In such a circumstance,
11 summary judgment should be granted, "so long as whatever is before
12 the district court demonstrates that the standard for entry of
13 summary judgment, as set forth in Rule 56©, is satisfied." Id. at
14 323.

15     If the moving party meets its initial responsibility, the
16 burden then shifts to the opposing party to establish that a
17 genuine issue as to any material fact actually does exist.
18 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
19 586 (1986); see also First Nat'l Bank of Ariz. v. Cities Serv. Co.,
20 391 U.S. 253, 288-89 (1968); Secor Ltd., 51 F.3d at 853.

21     In attempting to establish the existence of this factual
22 dispute, the opposing party may not rely upon the denials of its
23 pleadings, but is required to tender evidence of specific facts in
24 the form of affidavits, and/or admissible discovery material, in
25 support of its contention that the dispute exists. Fed. R. Civ.
26 P. 56(e); Matsushita, 475 U.S. at 586 n.11; see also First Nat'l

1  Bank, 391 U.S. at 289; Rand v. Rowland, 154 F.3d 952, 954 (9th Cir.

2  1998).   The opposing party must demonstrate that the fact in

3  contention is material, i.e., a fact that might affect the outcome

4  of the suit under the governing law, Anderson v. Liberty Lobby,

5  Inc., 477 U.S. 242, 248 (1986); Owens v. Local No. 169, Ass'n of

6  Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992)

7  (quoting T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,

8  809 F.2d 626, 630 (9th Cir. 1987)), and that the dispute is

9  genuine, i.e., the evidence is such that a reasonable jury could

10 return a verdict for the nonmoving party, Anderson, 477 U.S. 248-

11 49; see also Cline v. Indus. Maint. Eng'g & Contracting Co., 200

12 F.3d 1223, 1228 (9th Cir. 1999).

13     In the endeavor to establish the existence of a factual

14 dispute, the opposing party need not establish a material issue of

15 fact conclusively in its favor.  It is sufficient that "the claimed

16 factual dispute be shown to require a jury or judge to resolve the

17 parties' differing versions of the truth at trial."  First Nat'l

18 Bank, 391 U.S. at 290; see also T.W. Elec. Serv., 809 F.2d at 631.

19 Thus, the "purpose of summary judgment is to 'pierce the pleadings

20 and to assess the proof in order to see whether there is a genuine

21 need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R.

22 Civ. P. 56(e) advisory committee's note on 1963 amendments); see

23 also Int'l Union of Bricklayers & Allied Craftsman Local Union No.

24 20 v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

25     In resolving the summary judgment motion, the court examines

26 the pleadings, depositions, answers to interrogatories, and

1 admissions on file, together with the affidavits, if any.  Rule

2 56©; see also In re Citric Acid Litigation, 191 F.3d 1090, 1093

3 (9th Cir. 1999).  The evidence of the opposing party is to be

4 believed, see Anderson, 477 U.S. at 255, and all reasonable

5 inferences that may be drawn from the facts placed before the court

6 must be drawn in favor of the opposing party, see Matsushita, 475

7 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654,

8 655 (1962) (per curiam)); See also Headwaters Forest Def. v. County

9 of Humboldt, 211 F.3d 1121, 1132 (9th Cir. 2000).  Nevertheless,

10 inferences are not drawn out of the air, and it is the opposing

11 party's obligation to produce a factual predicate from which the

12 inference may be drawn.  See Richards v. Nielsen Freight Lines, 602

13 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

14 (9th Cir. 1987).

15     Finally, to demonstrate a genuine issue, the opposing party

16 "must do more than simply show that there is some metaphysical

17 doubt as to the material facts. . . . Where the record taken as a

18 whole could not lead a rational trier of fact to find for the

19 nonmoving party, there is no 'genuine issue for trial.'"

20 Matsushita, 475 U.S. at 587 (citation omitted).

21                        **III. Analysis**

22 **A. Breach of Contract**

23     First, the parties move for summary judgment on the breach of

24 contract claim.  Plaintiffs maintain that the November 6, 2001

25 letter operates as an acknowledgment of defendant's previous debt.

26 Although they concede that the statute of limitations has run on

7

1  any previous contracts between themselves and the defendant, they

2  argue that the letter creates a new agreement and, in turn, the

3  running of a new statute of limitations.   Even if the letter

4  constituted a sufficient acknowledgment of the debt, however, it

5  contained a condition -- that MATCO have sufficient funds available

6  -- that was never satisfied.   As such, the plaintiffs' claim fails

7  as a matter of law.

8      California Code of Civil Procedure section 360 provides that

9  an acknowledgment of an existing debt signed by the party to be

10  charged is sufficient to renew the statute of limitations. Cal.

11  Code Civ. Pro. § 360.   In interpreting this provision, California

12  courts require that an acknowledgment contain "a distinct and

13  unqualified admission . . . without intimation of an intent to

14  refuse payment."   Southern Pacific Co. v. Prosser, 122 Cal. 413,

15  416 (1898) (citations omitted).   The standard, however, is not

16  rigid, and courts have found that even informal language is

17  sufficient, so long as it identifies the debt.   See, e.g., Bronne

18  Shirt Co. v. Matthess, 88 F. Supp. 698 (S.D. Cal. 1950); Buescher

19  v. Lastar, 61 Cal. App. 3d 73 (1976);   Hayes v. O'Marr, 81 Cal.

20  App. 210 (1927).   Importantly, "[t]he postponement of [payment] to

21  a future time . . . does not make the acknowledgment uncertain.

22  It merely imposes an additional condition and makes it incumbent

23  on the plaintiff to allege and prove its existence before he can

24  sue on the new promise and recover."   Bronne Shirt Co., 88 F. Supp.

25  at 700; see also Hayes, 81 Cal. App. at 212 (requiring "pleading

26

1  and proof that the condition has come into being, on which the
2  promise was made").

3      Assuming, arguendo, that the November 2001 letter
4  constitutes an acknowledgment sufficient to renew the statute of
5  limitations and, further, that Mr. Trumpower is personally liable
6  for the debt,[2] the promise to pay is based on the fulfillment of
7  a condition.  The letter expressly states that the money will be
8  paid "as soon as Matco has [the funds] available."  Pls.' Mot.
9  for Summary Judgment, Ex. A.  This language constitutes a
10  condition that must be satisfied before plaintiffs can recover
11  the alleged debt.  In <u>Bronne Shirt</u>, for instance, the defendant
12  promised to pay an old debt "as soon as [he could] build up a
13  safe reserve," which the court found was a contractual condition
14  (not merely hope as to time or manner of payment) whose existence
15  plaintiff had to prove in order to sue on the new promise.  88
16  F. Supp. at 700 (describing satisfaction of condition as
17  "contingency" for suit).  Similarly, plaintiffs here must prove
18  that "the condition has come into being."  <u>Hayes</u>, 81 Cal. App.
19  at 212.

20  _____
21      [2] This latter assumption is particularly questionable, given
   that defendant specifically revised to the letter agreement to read
   "Michael Trumpower MATCO, Inc.", rather than just "Michael
22  Trumpower," and inserted the phrase "as soon as MATCO has
   available."  While plaintiffs maintain that defendant's deposition
23  testimony indicates that he intended to pay the debt out of profits
   from MATCO, that extrinsic evidence would only be relevant if the
24  agreement were ambiguous, which is doubtful.  Furthermore, if the
   debt was intended to be repaid from defendant's personal profits,
25  there would be no need for defendant to reference his capacity as
   an agent for MATCO; if they were personal profits, defendant could
26  do with them whatever he chose.

9

1   Fatally for plaintiffs, they are unable to prove the

2   fulfillment of the relevant condition. Because Matco is

3   bankrupt, it does not have the funds available to repay the debt.

4   Therefore, the condition specified in the letter remains

5   unfulfilled, and plaintiffs' claim fails as a matter of law.

6   Accordingly, the court denies plaintiffs' motion for summary

7   judgment and grants defendant's motion for summary judgment

8   regarding the breach of contract claim.

9   **B. Breach of the Covenant of Good Faith and Fair Dealing**

10   The parties also seek summary judgment on the issue of

11   whether defendant has breached the covenant of good faith and

12   fair dealing. "In every contract there is an implied covenant

13   of good faith and fair dealing that neither party will do

14   anything which injures the right of the other to receive the

15   benefits of the agreement." <u>Brown v. Superior Court of Los</u>

16   <u>Angeles County</u>, 34 Cal. 2d 559, 564 (1949) (citations omitted).

17   As noted above, the November 2001 letter agreement contains a

18   condition that defendant will repay the debt when MATCO has the

19   funds available. Plaintiffs do not allege nor present any

20   evidence that the defendant took any action to thwart the

21   fulfillment of that condition (e.g., deliberately impairing the

22   financial health of MATCO), and accordingly, the claim fails as

23   a matter of law.

24   **C. Unjust Enrichment**

25   Next, the parties move for summary judgment on the claim of

26   unjust enrichment. This claim is subsumed and barred by the

10

1    contracts covering the same subject matter.  <u>See</u> <u>California</u>

2 <u>Medical Ass'n v. Aetna U.S. Healthcare of California</u>, 94 Cal.

3 App. 4th 151, 168 (2001) ("[A]s a matter of law, a quasi-contract

4 action for unjust enrichment does not lie where, as here, express

5 binding agreements exist and define the parties' rights."); <u>Lance</u>

6 <u>Camper Manufacturing Corp. v. Republic Indemnity Co.</u>, 44 Cal.

7 App. 4th 194, 203 (1996) ("[A]n implied-in-fact or quasi-contract

8 cannot lie where there exists between the parties a valid express

9 contract covering the same subject matter.").

10      Here, a written agreement governed the real estate venture,

11 just as a promissory note governed the art acquisition venture.

12 The fact that the statute of limitations expired on enforcement

13 of those contracts does not render them invalid.  Furthermore,

14 the November 2001 acknowledgement embraces all three of the

15 ventures at issue.  Accordingly, the courts grants defendant's

16 motion for summary judgment on the unjust enrichment claim.

17 **D. Failure to Join Necessary Parties**

18      Defendant contends that the case should be dismissed for the

19 failure to join necessary parties under Federal Rule of Civil

20 Procedure 19, because he would otherwise be subject to multiple

21 legal obligations.  The basis for defendant's concern is that the

22 November 2001 letter referenced seven entities, not all of whom

23 are plaintiffs in the case.  However, it appears that the

24 entities lent money to plaintiff Malott (who then lent money to

25 defendant); accordingly, money is owed to these individuals by

26 plaintiff, not defendant, and these individuals are not necessary

1 │ parties to this action.

2 │                    **IV. Conclusion**

3 │      For the reasons set forth above, the court orders as

4 │ follows:

5 │           1. Plaintiffs' motion for summary judgment is denied.

6 │           2. Defendant's motion for summary judgment is granted.

7 │           3. Defendant's motion to extend the time for discovery

8 │ is denied as moot.

9 │      IT IS SO ORDERED.

10 │     DATED:  April 25, 2007.

11 │

12 │

13 │                    LAWRENCE K. KARLTON
   │                    SENIOR JUDGE
14 │                    UNITED STATES DISTRICT COURT

15 │

16 │

17 │

18 │

19 │

20 │

21 │

22 │

23 │

24 │

25 │

26 │

                              12